[No. D022209. Fourth Dist., Div. One. July 31, 1996.]

RABEE KOUDMANI, Plaintiff and Respondent, v.
OGLE ENTERPRISES, INC., Defendant and Appellant.

## COUNSEL

Westcott Griswold for Defendant and Appellant.

Thomas M. Finrow for Plaintiff and Respondent.

## OPINION

**WORK, Acting P. J.**—Assignee of Ford Wholesale Company (Ford), Ogle Enterprises, Inc., doing business as Advanced Roofing Concepts (Advanced), appeals a judgment releasing Rabee Koudmani's real property from a mechanic's lien under Civil Code[1] section 3154. Advanced's appeal presents the following issues: (1) if a claimant fails to commence an action to foreclose a mechanic's lien within 90 days after the recording of the claim of lien, is the claimant's inchoate right to a mechanic's lien automatically extinguished under section 3144, subdivision (b), and (2) does a claimant's release of a specific claim of lien recorded on a particular date automatically operate to extinguish the claimant's inchoate right to record subsequent claims of lien for the same work or materials? We answer these questions in the negative, reverse the judgment in part, and remand with directions.

### FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts are undisputed. On August 5, 1993, Ford recorded a mechanic's lien against Koudmani's property in the amount of $4,241.06 for roofing materials Ford supplied to Advanced and which Advanced incorporated into Koudmani's residence.[2] On November 1, Koudmani recorded a notice of completion in accordance with section 3093. On November 16, Ford recorded a second claim of lien in the amount of $3,159.13, the sum then due for the same materials which were the subject of the first claim of lien. The second claim of lien was recorded within 30 days after Koudmani recorded his notice of completion, as required by section 3116.

Koudmani's attorney sent Ford a letter dated November 17, demanding Ford release its first claim of lien recorded on August 5, because the 90-day time period under section 3144 to commence an action to foreclose that lien had expired. On November 29, Ford complied with Koudmani's demand and

---

[1]All statutory references are to the Civil Code unless otherwise specified.

[2]According to Koudmani, the general contractor he hired to construct his residence defaulted before finishing the project and filed bankruptcy. As a result, Advanced did not get paid for the roofing work it did on Koudmani's house, and did not pay Ford for the roofing materials Ford supplied for that work.

executed a written release prepared by Koudmani stating the first claim of lien was "satisfied or otherwise released and discharged." Soon thereafter, Koudmani received notice of the second claim of lien Ford recorded on November 16. By letter dated December 1, Koudmani demanded Ford release that claim of lien as well. Ford refused to release the second claim of lien. On December 29, Ford executed an assignment of the second claim of lien to Advanced.

On February 3, 1994, Koudmani filed a petition in municipal court to release his property from "mechanics lien(s)" under section 3154. On February 14, Advanced filed a complaint in municipal court to foreclose the lien claimed in Ford's second claim of lien. The court granted Koudmani's petition, ruling his property was released from "the Lien and Claims of Lien that [Ford recorded] on August 5, 1993 . . . and on November 16, 1993 . . . ." The court awarded Koudmani attorney fees and costs in the amount of $1,080.

## DISCUSSION

### I. *Nullification of Lien Under Section 3144*

█ Mechanics' lien law derives from article XIV, section 3 of the California Constitution.[3] "The mechanics' lien is the only creditors' remedy stemming from constitutional command and our courts 'have uniformly classified the mechanics' lien laws as remedial legislation, to be liberally construed for the protection of laborers and materialmen.' " (*Coast Central Credit Union* v. *Superior Court* (1989) 209 Cal.App.3d 703, 708 [257 Cal.Rptr. 468], quoting *Connolly Development, Inc.* v. *Superior Court* (1976) 17 Cal.3d 803, 826-827 [132 Cal.Rptr. 477, 553 P.2d 637].) "Generally, doubts concerning the meaning of the mechanics' lien statutes are resolved in favor of the claimant. [Citation.]" (*Coast Central Credit Union* v. *Superior Court, supra,* 209 Cal.App.3d at p. 711.)

█ Advanced contends the court erred in releasing the mechanic's lien on Koudmani's property because the lien was perfected. In response, Koudmani argues, among other things, that under section 3144, subdivision (b), Ford's failure to commence a foreclosure action within 90 days after it recorded its first claim of lien extinguished its right to record a subsequent

---

[3]California Constitution, article XIV, section 3 provides: "Mechanics, persons furnishing materials, artisans, and laborers of every class, shall have a lien upon the property upon which they have bestowed labor or furnished material for the value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such liens."

claim of lien based upon the same materials furnished.[4] Koudmani focuses on the distinction between the terms "claim of lien" and "lien" discussed in *Maris Management Corp.* v. *Assured Drywall & Textures* (1984) 152 Cal.App.3d 268 [199 Cal.Rptr. 309]. The *Maris* court stated: "The term 'lien' denotes the interest of the mechanic, materialman or laborer in the property, gained by reason of the work or material which he has bestowed upon the property. [Citation.] The term 'claim of lien' is the verified 'written statement' which the law permits to be recorded for the purpose of providing speedy and efficient enforcement of the lien. [Citation.] Thus, sections 3115 and 3116 provide that the original contractor or other claimant, 'in order to enforce a *lien*, must record his *claim of lien*' within the specified time periods. And section 3154 provides that when [90 days] have elapsed 'after recordation of a *claim of lien*, where no action has been brought to enforce such lien, the owner . . . may petition the proper court for a decree to release the property from the *lien*.' " (*Id.* at pp. 273-274, original italics.)

Thus, *Maris* concluded: "The statutory 'claim of lien' is not the lien. The lien is created by our [C]onstitution. The 'claim of lien,' and the remedy of foreclosure, are the vehicle and the procedure which the Legislature has provided, by law, for the speedy and efficient enforcement of such liens." (*Maris Management Corp.* v. *Assured Drywall & Textures, supra*, 152 Cal.App.3d at p. 275.)

Accordingly, Koudmani suggests that since section 3144, subdivision (b) provides "the lien [as opposed to claim of lien] automatically shall be null and void and of no further force and effect" if a foreclosure action is not commenced within the time limitation of subdivision (a), failure to timely commence a foreclosure action extinguishes the *lien*. Consequently, no subsequent *claims of lien* can be filed for the same work or materials.

We believe the distinction drawn by *Maris* between the terms "lien" and "claim of lien" is inaccurate and misleading. The true distinction is that between the inchoate constitutional *right* to a lien and the *lien* itself. *Maris* confuses these two concepts, treating them as if they are the same. The term "lien" is statutorily defined as "a charge imposed in some mode other than by a transfer in trust upon specific property by which it is made security for the performance of an act." (§ 2872.) Code of Civil Procedure section 1180

---

[4]Section 3144 provides:

"(a) No lien provided for in this chapter binds any property for a longer period of time than 90 days after the recording of the claim of lien, unless within that time an action to foreclose the lien is commenced in a proper court . . . .

"(b) If the claimant fails to commence an action to foreclose the lien within the time limitation provided in this section, the lien automatically shall be null and void and of no further force and effect."

similarly defines a "lien" as "a charge imposed upon specific property, by which it is made security for the performance of an act." The California Constitution gives materialmen such as Ford here an inchoate *right* to a lien. However, this inchoate right is meaningless unless it is exercised by the recording of a claim of lien. Unless and until a claim of lien is recorded, there is no lien, because there is no charge imposed upon the subject property to secure the owner's performance of the act of payment to the claimant.

Thus, it is more accurate to view the terms "lien" and "claim of lien," as used in the mechanics' lien statutes, as synonymous rather than as terms with distinct meanings, for the right to a lien against property does not become an actual lien encumbering the property until a claim of lien is recorded.

"The recordation of a timely claim of lien transforms the claimant's inchoate personal right created by our Constitution into a tangible lien on the property. Only this lien, which was created by the statutory scheme, is automatically nullified by a failure to timely commence a foreclosure proceeding. The constitutional right to a lien remains and may be perfected so long as the claimant can comply with the conditions precedent set forth in the statutory scheme. [Citations.]

"To read subdivision (b) of section 3144 as automatically extinguishing a laborer's or materialman's right to a lien upon failure to foreclose would give a windfall to property owners which the Legislature never intended." (*Coast Central Credit Union* v. *Superior Court, supra,* 209 Cal.App.3d at p. 711.)

Koudmani argues our opinion in *Automatic Sprinkler Corp.* v. *Southern Cal. Edison Co.* (1989) 216 Cal.App.3d 627 [266 Cal.Rptr. 662], is contrary to the holding in *Coast Central.* In *Automatic Sprinkler,* the plaintiff lien claimant recorded its claim of lien and commenced its foreclosure action in Orange County instead of San Diego County where the improved property was located. (*Automatic Sprinkler Corp.* v. *Southern Cal. Edison Co., supra,* 216 Cal.App.3d at pp. 630-631.) The action was transferred to San Diego County, but not within 90 days after the lien was recorded. (*Id.* at p. 635.) Although the plaintiff eventually recorded a second claim of lien in San Diego County, its complaint filed in Orange County and transferred to San Diego County sought only to foreclose on the lien recorded in Orange

County. (*Id.* at p. 634.)[5] We held the foreclosure action was barred under section 3144, subdivision (a) because it was neither commenced in nor transferred to a proper court within 90 days after the lien was recorded. (216 Cal.App.3d at p. 635.)

A footnote in *Automatic Sprinkler* contains dicta, noting the defendant property owner asserted the "substantive 'null and void' repercussion of a late action commencement clearly set forth in [section 3144] subdivision (b)" and going on to state the language of section 3144, subdivision (b) "makes it clear that a failure to timely commence the action terminates the substantive right to a lien. It is not merely a statute of limitations. Thus the Legislature has abrogated the holdings of [prior cases], that the section merely involves a statute of limitations." (*Automatic Sprinkler Corp.* v. *Southern Cal. Edison Co., supra,* 216 Cal.App.3d at p. 635, fn. 4.)

The significance of viewing section 3144, subdivision (b) as terminating a *substantive* right, as opposed to merely constituting a statute of limitations, is that unlike a statute of limitations defense, the defense of a claimant's failure to commence a foreclosure action within the time limit of section 3144, subdivision (a) cannot be waived by a defendant's failure to plead it by demurrer or answer. (See *Petersen* v. *W.T. Grant Co.* (1974) 41 Cal.App.3d 217, 220-224 [115 Cal.Rptr. 874].)[6] Whether a claimant who does not timely commence an action under section 3144, subdivision (a) is precluded by subdivision (b) from recording a second lien for the same work and materials was not before us in *Automatic Sprinkler*, as the claimant in that case did not seek to foreclose its subsequently recorded lien. We did not intend to hold that failure to timely commence an action under section 3144, subdivision (a) automatically extinguishes the inchoate, constitutional right to a mechanic's lien. Our statement that failure to timely commence an action to foreclosure a lien terminates the substantive right to a lien simply means the tangible lien created by the timely recordation of a claim of lien becomes null and void if no foreclosure action is commenced within 90 days after

---

[5]Additionally, we noted the belated recording in San Diego County was apparently untimely under section 3115. (*Automatic Sprinkler Corp.* v. *Southern Cal. Edison Co., supra,* 216 Cal.App.3d at pp. 635-636.)

[6]At least one court has referred to the limitations period in section 3144 as a "statute of limitations" since the addition of subdivision (b) to that statute and the publication of *Automatic Sprinkler.* (See *Westfour Corp.* v. *California First Bank* (1992) 3 Cal.App.4th 1554, 1558-1560 [5 Cal.Rptr.2d 394].) We also note that leading treatise writers on the subject of mechanics' lien law have ignored *Automatic Sprinkler,* continuing to instruct that section 3144 is a statute of limitations and the 90-day limitation period is not a substantive limitation but rather a procedural one which may be waived if not pleaded as a defense. (See Cal. Mechanics' Liens and Other Remedies (Cont.Ed.Bar 2d ed. 1988) § 2.31, p. 90; 8 Miller & Starr, Cal. Real Estate (2d ed. 1990) Mechanics' Liens, § 26:48, p. 518; Marsh, Cal. Mechanics' Lien Law (5th ed. 1994 rev.) § 4.58, p. 4-82.)

recordation, and the substantive right to foreclose on that particular lien is terminated. However, if the period for recording a lien is still open, the inchoate right to the lien is not terminated by operation of section 3144, subdivision (b), and a subsequent lien for the same work may be recorded. (*Coast Central Credit Union* v. *Superior Court, supra,* 209 Cal.App.3d at p. 711.) Accordingly, Ford's failure to commence a foreclosure action within 90 days of recording its first lien does not bar Advanced, as assignee of Ford's lien rights, from foreclosing on Ford's second lien.

## II.    *Effect of Ford's Release of the First Claim of Lien*

■    Advanced contends Ford's execution of the release of its first claim of lien did not extinguish the second lien it recorded.

Koudmani relies on *Santa Clara Land Title Co.* v. *Nowack & Associates, Inc.* (1991) 226 Cal.App.3d 1558 [277 Cal.Rptr. 497] for the proposition that execution of a release of a claim of lien extinguishes the underlying right to a lien so that no subsequent claims of lien can be recorded for the same work or materials. In *Santa Clara,* the lien claimant, Nowack and Associates, Inc. (Nowack) recorded a mechanic's claim of lien in December 1983 against the subject property for engineering services performed. The outstanding amount owed to Nowack for its services was ultimately paid and Nowack executed a release stating the claim of lien recorded in December 1983 was " '. . . fully satisfied, released, and discharged.' " (*Id.* at p. 1562.) Thereafter, Nowack continued to perform engineering services and recorded a second lien against the property in October 1985.

In 1987, the construction lender, who held a trust deed against the property recorded in 1984 before Nowack recorded its second lien, commenced nonjudicial foreclosure proceedings and obtained a trustee's deed to the property at the foreclosure sale. In 1988, Nowack obtained a judgment to foreclose its mechanic's lien. Santa Clara Land Title Company (Santa Clara), successor in interest to the construction lender, sued Nowack to quiet title to the property and Nowack cross-complained, contending its 1985 claim of lien was not extinguished by the construction lender's foreclosing its 1984 deed of trust because the 1985 mechanic's lien related back to 1979 when the subject work of improvement commenced. (*Santa Clara Land Title Co.* v. *Nowack & Associates, Inc., supra,* 226 Cal.App.3d at p. 1563.) The trial court granted Santa Clara's motion for summary judgment and quieted Santa Clara's title against Nowack's claim of lien and judgment of foreclosure, ruling the construction lender's 1984 deed of trust had priority over Nowack's 1985 claim of lien.

The principal issue in *Santa Clara* was whether Nowack's 1985 mechanic's lien had priority over an earlier recorded deed of trust. The *Santa Clara*

court noted the general rule that mechanics' liens relate back to the date the first work commences. (*Santa Clara Land Title Co.* v. *Nowack and Associates, Inc., supra,* 226 Cal.App.3d at p. 1567.) However, the court also noted Nowack's 1985 release stated the 1983 claim of lien was " 'fully satisfied, released and discharged' " (*id.* at p. 1566) and concluded "nothing in the statutory scheme or case law prevented the release executed by Nowack from effectively extinguishing both its . . . 1983 . . . claim of lien and the inchoate constitutional mechanic's lien right upon which such claim [of lien] was based" (*id.* at p. 1569).[7]

*Santa Clara* is distinguishable. Here, the underlying amount owing to Ford was never paid, and Ford's release, unlike Nowack's release in *Santa Clara,* did not conclusively and unequivocally represent the claim was "fully satisfied." Ford's release stated Ford's August 5, 1993, claim of lien was "hereby satisfied *or otherwise released and discharged.*" (Italics added.) A release which states a claim of lien is fully satisfied necessarily extinguishes the inchoate right to a lien upon which the claim of lien is based because the underlying obligation has been paid according to the express terms of the release. On the other hand, a release which indicates a specific claim of lien may *not* be "satisfied" (i.e., paid) but rather may be "*otherwise* released or discharged" does not extinguish the inchoate right to record subsequent liens based on the same work or material as the released claim of lien. Such a release frees the property only of the particular claim or claims of lien the release expressly identifies. To hold a release of an unsatisfied claim bars the right to later record a timely claim of lien for the same work or materials would frustrate the essential purpose of the mechanic's lien statutes, which is to protect contractors, laborers and material suppliers from nonpayment. Accordingly, we conclude the release executed by Ford released only the claim of lien Ford recorded in August 1993. The lien Ford recorded in November 1993 remains a valid lien against Koudmani's property.

### III. *Advanced Was Not Required to Record Preliminary Notice*

■ Koudmani contends Advanced is barred from maintaining an action to foreclose mechanic's lien because it failed to give preliminary notice as required by section 3114.[8] This contention is without merit.

It is well settled "that an assignee of a chose in action does not sue in his own right but stands in the shoes of the assignor. [Citation.] A thing or chose

---

[7]The *Santa Clara* court did not hold Nowack's release of its 1983 claim of lien rendered invalid its 1985 claim of lien based on postrelease services. The court only held the 1985 lien did not relate to the commencement of the subject construction project so as to have first-in-time priority over the 1984 deed of trust.

[8]Section 3114 provides: "A claimant shall be entitled to enforce a lien only if he has given the preliminary 20-day notice (private work) in accordance with the provisions of Section

in action would never be assignable if the assignee independently had to meet the requirements already satisfied by the assignor. If he could meet the requirements he would need no assignment; if not he could not use the assignment." (*Bush* v. *Superior Court* (1992) 10 Cal.App.4th 1374, 1380 [13 Cal.Rptr.2d 382].) Advanced's failure to give the statutory preliminary notice is immaterial because Advanced seeks foreclosure as assignee of Ford's claim of lien, and Koudmani does not dispute Ford gave proper preliminary notice.

## IV. *Attorney Fees*

The prevailing party on a petition to release property from lien under section 3154, subdivision (f) "shall be entitled to attorneys' fees not to exceed one thousand dollars ($1,000)." Accordingly, we remand the matter for a determination of the amount of attorney fees and costs to which Advanced is entitled as prevailing party on Koudmani's petition to release his property from Ford's second lien recorded in November 1993.[9]

## DISPOSITION

The portions of the judgment decreeing the subject property is released from the lien and claim of lien recorded on November 16, 1993, as document No. 1993-0768727 and awarding Koudmani attorney fees and costs in the amount of $1,080 are reversed. The matter is remanded for the court to determine the amount of costs and attorney fees to be awarded Advanced as prevailing party. In all other respects, the judgment is affirmed.

Huffman, J., and McDonald, J., concurred.

---

3097, if required by that section, and has made proof of service in accordance with the provisions of Section 3097.1."

[9]It was unnecessary for Koudmani to petition to release his property from Ford's first lien, as Ford voluntarily released that lien. Therefore, he is not entitled to attorney fees in connection with the release of the first lien.